UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

NIGHTKISS MARINE LTD.,

      Plaintiff,

vs.                                       CASE NO.

WORLD FUEL SERVICES CANADA, ULC

      Defendant.

_____/

## COMPLAINT
Rule 9(h)

COMES NOW the Plaintiff, NIGHTKISS MARINE LTD. ("NML") by and through its counsel, and for its Complaint against the Defendant, WORLD FUEL SERVICES CANADA, ULC ("WFS") alleges as follows:

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is proper under 28 United States Code § 1333 in that this matter involves a maritime claim. Venue is appropriate under 28 U.S.C. § 1391(b)(2) and pursuant to the forum selection clause of WFS's general terms and conditions.

2.      Plaintiff NML was and is a foreign corporation organized and operating pursuant to the laws of a foreign country.

3.      At all material times, Plaintiff NML was the operator of the M/V *Nightkiss*, an ocean-going vessel.

4.      WFS is a foreign corporation with its principal place of business at 9800 N.W. 41st Street, Suite 400, Miami, Florida, and is in the business of brokering the supply

of bunkers and marine fuels to vessels operating worldwide.

     5.     NML, through its agent Aleyon Shipping Co. Ltd., placed an order for fuel bunkers with WFS on November 16, 2020 for delivery of fuel to the M/V *Nightkiss* on November 21, 2020 at Come By Chance, Canada, per the attached bunker confirmation, Exhibit A hereto.  The M/V *Nightkiss* proceeded to port solely for the purpose of taking on bunkers.

     6.     On November 21, 2020, pursuant to the aforesaid fuel order, WFS (or its physical supplier) arrived with its fuel barge alongside the M/V *Nightkiss.*  The fuel barge Captain refused to deliver the fuel, asserting that because there were no mooring fairleads anywhere in the midships area of the *Nightkiss,* there could be no spring lines deployed, and without spring lines he believed the fuel barge would move excessively.  The M/V *Nightkiss* suggested that the mooring lines be sent to their midship and secured, but again the fuel barge Captain refused because of the height of freeboard which he felt might part his mooring lines.  The fuel barge Captain also advised that his head lines were not long enough to reach the forward mooring fairleads, due to the length of the *Nightkiss.*

     7.     As a result, the *Nightkiss* was forced to depart the fueling port without the fuel, and proceed to their scheduled port of call.

     8.     WFS was aware, in advance, of the type and size of the M/V *Nightkis* and similar capesize vessels, and vessels with identical arrangements had been fueled in the past without incident.  Prior to the vessel's call at Come By Chance, Canada, the supplier requested, and the Plaintiff provided, a full general arrangement plan detailing the vessel's length.  NML also responded to specific questions about whether there were fair

leads at the gangway area, to which NML replied. WFS at that time raised no objection to the physical characteristics of the *Nightkiss*, and by silence implied they represented that the bunkering operation could be accommodated by the local bunkering barge.

9.      In addition, WFS supplied a fueling barge whose mooring lines were not sufficiently long enough to accommodate a capesize vessel.

<u>**COUNT I**</u>
<u>**BREACH OF CONTRACT**</u>

Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 8, as if fully set forth, and further states:

Plaintiff and WFS contracted for the supply of fuel, per the attached Exhibit A.

10.      WFS is liable to Plaintiff for breach of contract for failure to deliver the fuel contracted for, as a result of providing a fuel barge that could not accommodate capsize vessels in general, and Plaintiff's vessel in particular, due to insufficient length of its mooring lines.

11.      WFS was aware of the size and configuration of Plaintiff's vessel prior to the date of fueling, but did not advise Plaintiff of any concerns.

12.      Defendant's breach of the contract caused damage to Plaintiff, including port costs, the costs of fuel to the fueling port, and lost time.

WHEREFORE, Plaintiff demands judgment for damages against Defendant, and other relief the Court deems proper and just.

**WHEREFORE**, as to all of the foregoing, Plaintiff prays:

A.      That this Complaint for Damages be deemed good and sufficient;

B.      That process is due form of law according to the rules and practices of this

Page 4

Honorable Court issue against Defendant WORLD FUEL SERVICES CANADA ULC, citing them to appear and answer all and singular the matters aforesaid;

C.      That after due proceedings be had, a judgment be entered in favor of Plaintiff, NIGHTKISS MARINE LTD. and against the Defendant for the amount of Plaintiff's damages and attorney's fees as will be proven at trial, together with interest and costs.

D.      That Plaintiff, NIGHTKISS MARINE LTD, be granted such other and additional legal or equitable relief and remedy to which it is entitled or which this Court deems appropriate.

Dated: June 18, 2021.

                              **HORR, NOVAK & SKIPP, P.A.**
                              Two Datran Center, Suite 1700
                              9130 South Dadeland Boulevard
                              Miami, FL 33156
                              Telephone: (305) 670-2525
                              Facsimile: (305) 670-2526
                              E-Mail Address: wboeringer@admiral-law.com
                                                   service@admiral-law.com


                               */s/ William R. Boeringer*
                              **WILLIAM R. BOERINGER**
                              Florida Bar No.: 347191